DECISION ON OBJECTION TO THE MAGISTRATE'S DECISION.
{¶ 1} Relator, Mary L. Edwards, commenced this original action in mandamus seeking to order respondent Industrial Commission of Ohio ("commission") to vacate its order denying her application for permanent total disability ("PTD") compensation and to order that the commission either find that she is entitled to PTD or conduct a new hearing.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate found that Dr. Amendt's report was not internally inconsistent and, therefore, it was some evidence upon which the commission could rely in determining that relator could perform sedentary to light-duty work. The fact that Dr. Amendt indicated an awareness of other conditions and noted that rehabilitation might be advisable is not in7consistent with his conclusion that relator can perform sedentary to light-duty work based solely on the allowed conditions.
 {¶ 3} The magistrate reached the same conclusion with respect to Dr. Mysiw's report. The fact that relator was currently functioning at less than a sedentary capacity does not invalidate his conclusion that she would be able to do light-duty work provided she can achieve medical clearance to participate in rehabilitation. Moreover, even if Dr. Mysiw's report is rejected, Dr. Amendt's report was some evidence upon which the commission could rely in reaching its conclusion.
 {¶ 4} Relator has filed an objection to the magistrate's decision in which she essentially re-argues the same points addressed in the magistrate's decision. Relator again argues that Dr. Amendt's report and Dr. Mysiw's report are internally inconsistent and cannot constitute some evidence upon which the commission could rely. For the reasons sets forth in the magistrate's decision, we disagree. Therefore, the objection is overruled.
 {¶ 5} Following an independent review of the matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objection overruled; writ of mandamus denied.
Brown, P.J., and Bryant, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. :
Mary L. Edwards, :
Relator, :
 :
v. : No. 04AP-115
 :
American Building Maintenance Co. : (REGULAR CALENDAR)
and Industrial Commission of Ohio, :
Respondents. :
 MAGISTRATE'S DECISION Rendered on September 13, 2004 Butkovich, Schmipf, Schimpf Ginocchio Co., L.P.A., Robert E.Hof and Joseph A. Butkovich, for relator.
Jim Petro, Attorney General, and Joseph C. Mastrangelo, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 6} Relator, Mary L. Edwards, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her application for permanent total disability ("PTD") compensation and ordering the commission to either find that she is entitled to that compensation or to conduct a new hearing determining whether or not to grant that compensation.
Findings of Fact:
 {¶ 7} 1. On June 27, 1977, relator sustained a work-related injury and her claim has been allowed for: "[l]umbo-sacral strain. Aggravation of degenerative arthritis * * * dysthymic disorder."
 {¶ 8} 2. Relator has not worked since the date of injury.
 {¶ 9} 3. On May 17, 1989, relator filed an application for PTD compensation supported by the June 20, 1988 report of her treating physician Fredrick B. Winston, M.D., who opined that relator was unable to participate in any type of gainful employment due to the allowed conditions in her claim.
 {¶ 10} 4. On July 5, 1989, relator was examined by Wayne C. Amendt, M.D., on behalf of the commission. Dr. Amendt listed the allowed conditions, provided a history of relator's conditions, set out his physical findings, and opined as follows:
The industrial injury does not prevent the claimant from * * * engaging in sustained remunerative employment of a sedentary to light lifting nature. Her impairment based on the AMA Guides to the Evaluation of Permanent Impairment Edition 3 is rated at 24% of the whole person.
Rehabilitation Potential:
Considering the percentage of impairment, the claimant is medically stable to participate in rehab services at a sedentary activity level. No new diagnostic tests are required. Programs which would assist the claimant in returning to gainful employment would be vocational evaluation, pain and stress management and general conditioning. If these programs are implemented[,] sedentary work would be appropriate for him [sic].
 {¶ 11} 5. In an addendum, dated August 19, 1989, Dr. Amendt stated that relator's condition was permanent and that she could not return to her former position of employment.
 {¶ 12} 6. On July 21, 1989, relator was examined by Michael T. Farrell, Ph.D., for her allowed psychological condition. Dr. Farrell opined that relator appeared to be suffering a five to ten percent whole body impairment as a result of the allowed psychological condition and that, based solely upon her allowed psychological condition, there was no reason why she would be unable to engage in other forms of sustained remunerative employment.
 {¶ 13} 7. An independent medical examination was performed by W. Jerry Mysiw, M.D., on April 3, 1990. In his report, Dr. Mysiw noted the following relevant past medical history:
Past medical history is significant for hypertension and organic heart disease. Patient states that she has had several MI's dating from 1987 to September of 1989. She continues to experience three to four episodes of chest pain per week. These are non-exertional in nature. This discomfort will radiate up into the left upper extremity and it is associated with palpitations and diaphoresis. The discomfort is relieved with two to three tablets of nitroglycerine. * * *
 {¶ 14} Dr. Mysiw concluded as follows:
The patient appears to be appropriate for admission to a Pain and Stress Management Program. She is functioning at less than a sedentary capacity. However, her medical status may preclude participation in such a program. Specifically her weight and her organic heart disease may limit her exercise tolerance. Therefore, Ms. [Edwards] requires medical clearance prior to participation in such a program. Upon achieving medical clearance it is unlikely that Ms. [Edwards] will improve beyond functioning in a light work capacity.
 {¶ 15} 8. Relator's application was heard before a staff hearing officer ("SHO") on October 6, 1999, and resulted in an order denying her application for PTD compensation. The SHO relied upon the reports of Drs. Amendt and Mysiw and concluded that relator was capable of performing sedentary to light duty employment. With regards to her ability to re-enter the workforce and its consideration of the non-medical vocational factors, the SHO noted as follows:
* * * The Staff Hearing Officer further finds that the claimant is a good candidate to participate in rehabilitation programs aimed at rehabilitating her re-entry into the job market, such as a pain and stress management program, structured job search and psychological intervention for vocational readjustment. The Staff hearing Officer further finds that while the vocational evaluators at the J. Leonard Camera Center indicated that the claimant was not a good candidate for rehabilitation services, part of that determination was based on motivational factors and other factors unrelated to this industrial injury.
The Staff Hearing Officer finds that the claimant was 51 years of age at the time she filed this Application for Permanent Total Disability Compensation. The Staff Hearing Officer further finds that the claimant completed the eleventh grade of high school and obtained a certificate to perform police work from the Los Angeles Academy in 1969. Following her completion of that certificate, the claimant functioned as a police officer for the Los Angeles Police Department. That employment lasted for approximately two years. The claimant then became employed as an industrial cleaner for a one month period of time before sustaining this industrial injury. The Staff Hearing Officer finds that the claimant's age categorizes her as a person of middle age which is an asset in adapting to new work rules, processes, methods, procedures and tools involved in a new occupation. The Staff Hearing Officer further finds that the claimant's age is an asset which would enable her to participate in programs aimed at rehabilitation. The Staff Hearing Officer further finds that the claimant's education is categorized as a limited education in that the claimant did not acquire a high school diploma. However, the claimant demonstrated the ability to acquire skills through training by completing a certificate to perform police work. The Staff Hearing Officer finds such ability to be an asset in acquiring new skills for new occupations. The Staff Hearing Officer further finds that the claimant would be a good candidate to participate in programs aimed at academic remediation and obtaining a G.E.D. certificate. The Staff Hearing Officer further finds that the claimant's work history is very limited in that she worked for a period of two years as a police officer and one month as an industrial cleaner. The Staff Hearing Officer finds that the claimant did not acquire transferable work skills as a result of those work experiences. However, the Staff Hearing Officer finds that the claimant is capable of accessing entry-level unskilled occupations in the sedentary to light duty range of employment. Considering the claimant's age, education and work experience, the Staff Hearing Officer finds that the claimant is a good candidate to participate in rehabilitation programs aimed at placing her in employment and also accessing unskilled entry-level occupations in the sedentary to light duty range. Accordingly, the Staff Hearing Officer finds that the claimant is able to engage in sustained remunerative employment.
This order is based on the medical reports of Dr. Amendt, Dr. Mysiw and Dr. Farrell.
 {¶ 16} 9. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 17} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v.Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 18} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 19} In this mandamus action, relator contends that the commission abused its discretion by relying upon the medical reports of Drs. Amendt and Mysiw, and argues that those reports were equivocal. It is undisputed that equivocal medical opinions do not constitute "some evidence" upon which the commission can rely. State ex rel. Eberhardt v. Flxible Corp.
(1994), 70 Ohio St.3d 649. Equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. Id. Furthermore, doctors' reports which are internally inconsistent do not qualify as "some evidence" upon which the commission can rely. State ex rel. Lopez v. Indus. Comm.
(1994), 69 Ohio St.3d 445; State ex rel. Taylor v. Indus. Comm. (1995),71 Ohio St.3d 582.
 {¶ 20} Relator contends that the report of Dr. Amendt is internally inconsistent and ambiguous for the following reasons. Relator contends that Dr. Amendt first opined that relator's industrial injury does not prevent her from engaging in sustained remunerative employment of a sedentary to light lifting nature, and then went on to note that if rehabilitation services are implemented then sedentary work would be appropriate for relator. Relator contends that it is unclear whether or not Dr. Amendt is actually saying that relator can perform some sustained remunerative employment now or whether relator must first undergo rehabilitation. For the reasons that follow, this magistrate disagrees.
 {¶ 21} In his report, Dr. Amendt specifically concluded that relator was capable of engaging in sustained remunerative employment of a sedentary to light lifting nature. He concluded that she had a 24 percent whole person impairment. Thereafter, in addressing her rehabilitation potential, Dr. Amendt concluded that relator was medically stable to participate in rehabilitative services at a sedentary activity level. He noted that such programs would assist relator in returning to gainful employment and that pain and stress management and general conditioning were also appropriate for her.
 {¶ 22} The record is clear that relator has numerous other physical problems which could make her re-entry into the workforce difficult. However, a determination of whether or not someone is permanently and totally disabled is to be based solely upon the allowed physical conditions and doctors are to opine regarding a claimant's physical abilities as a direct result of the allowed physical conditions alone. The fact that Dr. Amendt indicated an awareness of her other conditions and noted that rehabilitation would be advisable to help her re-enter the workforce, does not render his conclusion that, based solely upon the allowed conditions, she can perform sedentary to light duty work. As such, this magistrate concludes that relator's argument lacks merit.
 {¶ 23} Relator also contends that the report of Dr. Mysiw is similarly internally inconsistent and equivocal. In his April 3, 1990 report, Dr. Mysiw specifically noted that relator suffers from hypertension and organic heart disease, and that she has had several myocardial infarctions between 1987 and 1989. Relator is having three to four episodes of chest pain per week, which are non-exertional in nature, and which require her to use nitroglycerin. Dr. Mysiw recommended that relator be admitted to a pain and stress management program; however, he noted that her weight and organic heart disease could limit her exercise tolerance and recommended that she receive medical clearance prior to participating in any such program. The fact that he noted, that at the current time, given all of her conditions both allowed and non-allowed, she was functioning at less than a sedentary capacity, does not invalidate his conclusion that, provided she can achieve medical clearance to participate in rehabilitation, she will be able to function at a light duty work capacity. Even if this court was to find that Dr. Mysiw's report is somewhat ambiguous, the commission still had Dr. Amendt's medical report to rely upon and a writ of mandamus would not be appropriate.
 {¶ 24} Relator also argues that the commission's order fails to meet the requirements of Noll, supra. This magistrate disagrees. The commission cited the evidence upon which it relied and provided a sufficient explanation for its decision.
 {¶ 25} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying her application for permanent and total disability compensation and this court should deny relator's request for a writ of mandamus.